IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AARON E. MINOR,                              )
                                             )
        Plaintiff,                           )
                                             )          Civil Action No. 17-1638
        v.                                   )
                                             )
ROBERT WILKIE, Secretary of the             )
Department of Veterans Affairs,             )
                                             )
        Defendant.                           )

## MEMORANDUM OPINION

Pending before the Court is Defendant's motion for summary judgment. For the reasons

below, the motion will be granted in part and denied in part.[1]

### I.    PROCEDURAL HISTORY

Before filing this action, Plaintiff Aaron A. Minor ("Minor"), a police officer with the

Department of Veterans Affairs' ("VA") Medical Center in Butler, Pennsylvania ("Butler VA"),

filed a charge of racial discrimination with the VA's Equal Employment Office ("EEO"). (Compl.

¶ 21.) Upon receipt of the EEO's final decision denying that charge, Minor commenced this action

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against

Defendant Robert Wilkie, the VA Secretary ("Secretary").[2] (*Id.*) After receiving a final decision

---

[1] Under the Federal Magistrate Judges Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent of all parties to a case gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). Both parties consented to the magistrate judge's jurisdiction. (ECF Nos. 4, 6.)

[2] Under Fed. R. Civ. P. 25(d) Robert Wilkie is automatically substituted for David Shulkin as the party defendant in this case.

by the EEO on another discrimination claim, Minor ultimately filed a Second Amended Complaint. (Am. Compl.)

In Count I of his Second Amended Complaint, Minor alleges that he was discriminated against on the basis of race when he was denied a transfer to the VA Medical Center in Pittsburgh, Pennsylvania ("Pittsburgh VA"). Minor also claims in Counts II and III that he was discriminated against based on race and retaliated against for filing a complaint with the EEO when he subsequently was not selected for the position of Lead Police Officer at the Butler VA. Finally, Minor alleges in Count IV that he was retaliated against for filing the EEO complaints related to the above two events when, in April 2018, he was not selected for the position of Supervisory Police Officer at the Butler VA.[3]

After close of discovery, the Secretary moved for summary judgment. (ECF No. 41.) This motion is fully briefed and ripe for resolution.

## II.    FACTUAL BACKGROUND[4]

### A.    Minor's Employment Background with the VA

Minor enlisted in the National Guard in 1986 and remained in the military, in at least a reserve status, until his retirement with an honorable discharge in September 2014. (Minor's Counter Statement of Facts ("Pl.'s CSOF"), ECF No. 48 ¶ 1; Defendant's Response to Pl.'s CSOF ("Def.'s Response"), ECF No. 52 ¶ 1.)[5] In early 2015, while he was visiting the Butler VA as a

---

[3] In response to the Secretary's motion for summary judgment, Minor indicated that he is no longer pursuing the retaliation claim in Count IV. (ECF No. 45.)

[4] The facts are taken from evidence that is either undisputed or not fairly disputed based on the record. Disputed facts are viewed in the light most favorable to the nonmoving party in accordance with *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[5] Separate citations to Defendant's Response are omitted where the Secretary admits a fact in Plaintiff's Counter Statement of Facts.

patient, Minor stopped by its police department and asked if they were hiring police officers. (Defendant's Statement of Facts ("Def.'s SOF"), ECF No. 43 ¶ 11; Minor's Response to Def.'s SOF ("Pl.'s Response"), ECF No. 47 ¶ 11.) [6] Police Chief Thomas Bennett ("Chief Bennett") told Minor that there were no police officer positions currently open, but promised to contact him when there was vacancy. (Def.'s SOF ¶ 11.) Several months later, Chief Bennett informed Minor of an open police officer position and encouraged him to apply. (*Id.* ¶ 12.) After Minor submitted his application, Chief Bennett and Lieutenant Charleton Namachar ("Lt. Namachar") interviewed him for the position. (*Id.* ¶ 13.) According to Chief Bennett and Lt. Namachar, Minor did an excellent job during his interview. (*Id.* ¶ 14.) Chief Bennett offered the position to Minor, making him the first African-American police officer employed at the Butler VA. (*Id.* ¶ 15; Pl.'s CSOF ¶ 24.) He was offered this position over several other candidates, including Jonathan Hinkle, who had also interviewed for it. (Def.'s SOF ¶¶ 13, 15.)

Minor began his employment with the Butler VA in April 2015 at GS-Level 5. (Def.'s SOF ¶ 18.) He was rated as "excellent" in his first-year performance evaluation and was promoted to GS-Level 6 in April 2016. (*Id.* ¶¶ 19, 20.) Sometime in 2015 or 2016, Chief Bennett considered Minor for a GS-Level 7 Lead Police Officer position at the Butler VA. (*Id.* ¶ 21.) Minor asserts that he was not aware that there was a vacancy and did not apply for this position. (Pl.'s Response ¶ 21.) Moreover, he was not aware that he was being interviewed until he was called in Chief Bennett's office. (*Id.*) Following the interview process, Jonathan Hinkle ("Sgt. Hinkle") was selected for the position because Chief Bennett thought that he had the most experience and

---

[6] Separate citations to Plaintiff's Response are omitted where Minor admits a fact in Defendant's Statement of Facts.

participated in the best interview out of all the candidates. (Def.'s SOF ¶ 23.) At the time, Minor raised no concerns about the interview process or the fact that he was not selected. (*Id.* ¶ 25.)

B.   Minor's Request to Transfer to the Pittsburgh VA

In the summer of 2016, the Pittsburgh VA sought to hire additional police officers. (*Id.* ¶ 26.) At the time, police officers at the Pittsburgh VA were at a GS-Level 7. (*Id.*) Minor was interested in transferring to the Pittsburgh VA and told Chief Bennett that while he was happy at the Butler VA he could not turn down a chance to make GS-Level 7. (*Id.* ¶ 27.) Chief Bennett encouraged Minor to seek a transfer appointment and provided a positive reference to the Pittsburgh VA during the process. (*Id.* ¶¶ 28, 41.)

Chief Bennett later learned that three Butler VA police officers, including Minor, had accepted transfer appointments with the Pittsburgh VA. (*Id.* ¶ 30.) Subsequently, Captain Paul Shumaker ("Cpt. Shumaker") of the Pittsburgh VA conducted pre-employment background checks on all three appointees, including Minor. (*Id.* ¶ 30.) While the other two appointees did not have criminal records, Minor's background check reflected that he had been convicted of at least two crimes in Pennsylvania and was arrested in Massachusetts in 2009. (*Id.* ¶¶ 30, 31.) Cpt. Shumaker became concerned that Minor's criminal record would preclude him from accessing the National Crime Information Center ("NCIC") and the Commonwealth Law Enforcement Assistance Network ("CLEAN") databases. (*Id.* ¶ 32.) The CLEAN regulations disqualify a person from accessing its database if he has a felony conviction or a misdemeanor within ten years. (Pl.'s CSOF ¶ 30.) These databases allow police officers to obtain information such as driver's license information, stolen articles, wanted individuals, and criminal histories. (Def.'s SOF ¶ 32.) According to Cpt. Shumaker, access to the NCIC/CLEAN databases is crucial for the police officers in the Pittsburgh VA to conduct their law enforcement duties. (*Id.*)

4

Cpt. Shumaker reached out to Chief Bennett to discuss the issue. (*Id.* ¶ 34.) Chief Bennett told Cpt. Shumaker that he did not have any documentation related to Minor's criminal history but that he believed that Minor had passed the criminal background check process. (*Id.*) Chief Bennett also explained that this had not been an issue because the Butler VA did not require line police officers like Minor to have access to the NCIC/CLEAN databases. (*Id.*) After speaking with Cpt. Shumaker, Chief Bennett informed Minor that there may be an issue with his transfer to the Pittsburgh VA related to his prior criminal history and access to the NCIC/CLEAN systems. (*Id.* ¶ 35.) Chief Bennett and Cpt. Shumaker asked Minor to provide Cpt. Shumaker with documentation verifying that his criminal charges in Massachusetts had been dismissed. (*Id.* ¶ 36.)

On August 8, 2016, Minor e-mailed Cpt. Shumaker and scheduled a meeting with him for the next day so that he could provide Cpt. Shumaker with the requested paperwork. (*Id.* ¶ 36.) Cpt. Shumaker then emailed the CLEAN Information Security Officer at the Pennsylvania State Police requesting guidance on Minor's ability to access the NCIC/CLEAN databases. (*Id.* 38.) Cpt. Shumaker's request was forwarded to Pennsylvania State Police Corporal Jason Winklowski ("Cpl. Winklowski") to determine whether Minor had any NCIC/CLEAN restrictions. (*Id.*)

Cpt. Shumaker met with Minor in person for the first time on August 9, 2016. (*Id.* ¶ 39.) Cpt. Shumaker did not know before this meeting that Minor was African American. (*Id.* ¶ 40.) During their meeting, Minor told Cpt. Shumaker that the Pennsylvania convictions on his record were misdemeanors that occurred twenty or more years ago and had never affected his military service or security clearance. (Pl.'s CSOF ¶ 33.) Minor also provided Cpt. Shumaker with documentation showing that the 2009 charges from Massachusetts had been dismissed and explained the contents of that document. (*Id.* ¶ 31.) When asked by Cpt. Shumaker if he tried to

have his record expunged to remove the Massachusetts charges, Minor indicated that he had not done so. (Def.'s SOF ¶ 39.)

Minor testified that after Cpt. Shumaker received the disposition papers and listened to his explanation, Cpt. Shumaker "kept looking around like he did not want to see that it said dismissed." (Pl.'s CSOF ¶ 31.) Minor also testified that at the end of this meeting, he specifically asked Cpt. Shumaker: "do you see now that the charges were dismissed?" to which Cpt. Shumaker reacted "by acting like he did not want to admit that they were dismissed." (*Id.* ¶ 34.) According to Minor, Cpt. Shumaker also told him during their meeting that "I would have never hired you." (*Id.* ¶ 32.)

Cpt. Shumaker sent an email to Cpl. Winklowski on August 18, 2016, to follow up on the NCIC/CLEAN issue. (Def.'s SOF ¶ 42.) Cpl. Winklowski responded that there were felony convictions on Minor's record and inquired if Minor had provided documentation to show that the charges should not be there. (*Id.*) Cpt. Shumaker sent Cpl. Winklowski the paperwork that Minor had provided. (*Id.*) In a follow up email sent that same day, Cpt. Shumaker told Cpl. Winklowski that, as for the two charges from Massachusetts, "it appears to me the count 1 offense . . . was dismissed . . . [b]ut I do not see a final disposition on Count 2 other than pretrial probation." (ECF No. 44-5 at 23.) On September 6, 2016, Cpl. Winklowski emailed Cpt. Shumaker and informed him that Minor "not only has a PA Rap sheet but he also has an out of state rap sheet and would be prohibited to have CLEAN access." (Def.'s SOF ¶ 45.) Cpt. Shumaker notified the HR department, as well as Chief Bennett and Lt. Namachar, that the Pittsburgh VA would be unable to take Minor because he cannot access the NCIC/CLEAN database. (*Id.* at 46.)

On September 14, 2016, Lt. Namachar sent an email to Cpl. Winklowski in which he stated that Minor was not disqualified from accessing the NCIC/CLEAN databases. (*Id.* ¶ 48.) In his email, Lt. Namachar noted that the administrative regulations governing CLEAN provide for

disqualification from the database only if there is a felony conviction or a misdemeanor within ten years. (Pl.'s CSOF ¶ 30.) He explained that Minor should not have been denied CLEAN access because he had no felony convictions or any misdemeanor convictions within the previous ten years. (ECF No. 44-3 at 14.)

Several days later, Lt. Namachar wrote to Wendy Matter, the Pennsylvania State Police Business Analyst/Vendor Access Supervisor, to share his opinion that Minor should not be disqualified from accessing NCIC/CLEAN based on his criminal record. (Def.'s SOF ¶ 45.) After conducting a criminal history background check, Ms. Matter verified that Minor had not been convicted of any felony offenses and that the two previous misdemeanor convictions reported on his record had expired well beyond the agency's ten-year rule. (ECF No. 44-3 at 14.) Ms. Matter informed Lt. Namachar that Minor was eligible for unrestricted NCIC/CLEAN. (*Id.*) Lt. Namachar shared Ms. Matter's determination with Chief Bennett and Minor the same day. (*Id.*)

Subsequently, Cpl. Winklowski called Lt. Namachar and told him that he was Ms. Matter's supervisor and that he disagreed with her opinion. (Def.'s SOF ¶ 50.) According to Cpl. Winklowski, Minor's criminal history record reflected a felony charge along with other misdemeanor convictions. (ECF No. 44-3 at 15.) Lt. Namachar explained to Cpl. Winklowski that he had spoken to the clerk employed by Massachusetts Police Department of Records Division and had confirmed that Minor's 2009 felony charge was dismissed. (*Id.*) Lt. Namachar also explained that Minor's previous two misdemeanor convictions occurred outside of the ten-year rule. (*Id.*) Cpl. Winklowski maintained that he had the discretion to review the totality of a person's criminal history (including charges/convictions outside the ten-year rule) in determining whether to grant access to NCIC/CLEAN. (*Id.*) He noted, however, that his interpretation of the regulations

could be appealed to his supervisor. (*Id.*) Lt. Namachar advised Chief Bennett of his conversation with Cpl. Winklowski. (*Id.*)

On that same day, at the request of the HR Department, Cpt. Shumaker reached out to Cpl. Winklowski in order to obtain an official letter from the Pennsylvania State Police regarding Minor's NCIC/CLEAN access. (Def.'s SOF ¶ 52.) Cpl. Winklowski provided a letter to Cpt. Shumaker on October 11, 2016, in which he stated that Minor could not access NCIC/CLEAN based on his criminal record. (*Id.* ¶ 55.) In that letter, Cpl. Winklowski noted that under pertinent regulations, he had authority to exercise discretion in permitting access even though the initial findings from the criminal history prohibited access. (Pl.'s Response ¶ 59.) Cpl. Winklowski concluded his letter by stating that if Cpt. Shumaker felt that the case should be reviewed and a variance should be granted, he should forward detailed information to Cpl. Winklowski regarding Minor's case for further review. (*Id.*)

On October 17, 2016, Minor sent Chief Bennett a letter stating that he had decided to withdraw his request to transfer to the Pittsburgh VA. (Def.'s SOF ¶ 56.) Minor explained that his decision was based on racially charged issues that had delayed his transfer and that he was happy to remain at the Butler VA. (ECF No. 44-2 at 25.) Minor testified that based on his personal observations and discussions with police officers at the Pittsburgh VA, out of a force of more than a hundred police officers, there were only two or three African-American police officers at the Pittsburgh VA. (Pl.'s CSOF ¶ 26.)

On October 26, 2016, the HR Department notified Minor that he would not be able to transfer to the Pittsburgh VA given the determination that his criminal record precluded his access to the NCIC/CLEAN databases. (Def.'s SOF ¶ 57.) According to Chief Bennett, only supervisory police officers at the Butler VA have access to those databases. (*Id.* ¶ 63.) Chief Bennett also

testified that Minor's criminal history was not an impediment to his ability to be promoted at the Butler VA. (Pl.'s CSOF ¶ 22.)

C.     <u>Minor is not Selected as Lead Police Officer</u>

In January 2017, Chief Bennett, Lt. Namachar, and Sgt. Hinkle conducted panel interviews for a GS-Level 7 Lead Police Officer position at the Butler VA. (Def.'s SOF ¶ 71.) These interviews were performance-based, as the candidates provided detailed answers regarding how they would respond to hypothetical situations and the panel then rated each answer on a scale of 1-5. (*Id.* ¶ 78.) There was also a basic Microsoft Office software skills exercise as part of the interview. (*Id.*) Minor was among the four candidates interviewed for that position. (*Id.* ¶¶ 77, 89.)

According to the panel, Minor acted very unprofessionally during his interview. (*Id.* ¶ 80.) He wore a leather biker jacket and jeans to the interview and asked "how long is this going to take?" (*Id.*) The position of Lead Police Officer entailed training new officers utilizing courses approved by the VA's Police Academy at the Law Enforcement Training Center ("LETC"). (*Id.* ¶ 82, 84.) During the interview, Minor criticized certain aspects of the training provided by the LETC. (*Id.* ¶¶ 82, 83.) As Minor acknowledges, the panel was not pleased by his responses about the LETC. (*Id.* ¶ 83.)

One of the interview questions referenced an email that Sgt. Hinkle had sent to all police officers at the Butler VA. (*Id.* ¶ 85.) That email summarized some of Sgt. Hinkle's concerns including the fact that police officers were not conducting mandatory building security checks. (*Id.*) The panel asked Minor what he thought of the email. (*Id.*) Minor responded that he did not approve of Sgt. Hinkle's method of communication and expressed his belief that building checks are not necessary or important. (*Id.*) The panel found that Minor's response reflected a lack of

respect both for his supervisors' orders and a lack of interest in the job for which he was applying. (*Id.* ¶ 88.)

After interviewing all candidates, the panel determined that Brandon Lightner ("Officer Lightner") had the best performance during the interview and received the highest score. (*Id.* ¶¶ 90, 91.) According to the panel, unlike Minor, Officer Lightner dressed professionally, answered the questions more completely, and expressed an interest in following mandatory protocols and procedures. (*Id.* ¶ 90.) Officer Lightner also demonstrated greater proficiency with the software skills exercise than Minor. (*Id.*) Ultimately, Officer Lightner, who is Caucasian, was selected for the position over not only Minor, but also over two other Caucasian officers who had worked at the Butler VA for a longer period than Minor. (*Id.* ¶ 92.)

Minor testified that he had no evidence that Sgt. Hinkle, who gave Minor the lowest scores on his interview responses, harbored a racial bias against him. (*Id.* ¶ 102.) Neither Chief Bennett, Lt. Namachar nor Sgt. Hinkle knew at the time of the interview in January 2017 that Minor had filed an EEO complaint related to the denial of his transfer to the Pittsburgh VA. (*Id.* ¶ 93; ECF No. 53-1 ¶¶ 2–5.) That complaint was initiated in October 2016 with a formal complaint filed in November 2016. (Pl.'s Response ¶ 93.)

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

## IV. DISCUSSION

Title VII's antidiscrimination provision makes it an unlawful employment practice for an employer in the private sector "to fail or refuse to hire or to discharge any individual, or otherwise

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." *Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII also includes an anti-retaliation provision which prohibits a private sector employer from "discriminating against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* at 293 (quoting 42 U.S.C. § 2000e-3(a)). Section 717 of Title VII, as amended, 42 U.S.C. § 2000e-16, provides "federal employees with the full rights available in the courts as are granted to individuals in the private sector under Title VII." *Id.* at 294 (quoting *Loeffler v. Frank*, 486 U.S. 549, 559 (1988)).

Cases in which there is no direct evidence of discrimination or retaliation are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). As noted in *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017):

> Under that framework, a plaintiff first must establish the requisite elements of his claim (called the *prima facie* elements); if so, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action, and then the plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken.

*Id.* at 263 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802–04)).

A.     Denial of Transfer to the Pittsburgh VA (Count I)

In Count I, Minor claims that he was denied a transfer to the Pittsburgh VA because of racial discrimination. To establish a *prima facie* case of race discrimination, a claimant must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that circumstances give rise to an inference of unlawful race

12

discrimination. *Mandel v. M & Q Packaging Corp.*, 706 F.2d 157, 169 (3d Cir. 2013). In its motion for summary judgment, the Secretary maintains that Minor's *prima facie* claim of race discrimination fails as a matter of law because he cannot establish the second or the fourth elements.

With respect to the second element, the Secretary argues that Minor was not qualified for the Police Officer position at the Pittsburgh VA because he could not access the NCIC/CLEAN databases. It is undisputed, however, that the HR department had extended, and Minor had accepted, the transfer appointment to the Pittsburgh VA before the NCIC/CLEAN access issue arose. Therefore, there was an initial determination that Minor was qualified for the position at the Pittsburgh VA.

To the extent that the Secretary characterizes access to NCIC/CLEAN as a qualification necessary for the position, Minor has presented evidence which, at a minimum, creates a genuine issue of material fact that under the pertinent regulations, he was qualified to access the NCIC/CLEAN databases. Minor's deposition testimony and Lt. Namachar's communications with Ms. Matter and Cpl. Winklowski of the Pennsylvania State Police reflect that Minor's Pennsylvania misdemeanor convictions were more than twenty years old, he was never convicted of a felony, and the charges arising out of his 2009 arrest in Massachusetts were dismissed. This is sufficient to satisfy Minor's burden on the second element of his *prima facie* case. *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 54 (3d Cir. 1990) (relying on plaintiff's evidence alone to find *prima facie* case satisfied and noting that defendant's arguments rebutting plaintiff's *prima facie* case belong in later stages of the *McDonnell Douglas* framework).

To prevail on the fourth element that there are circumstances that give rise to an inference of unlawful race discrimination, a plaintiff may present evidence that similarly situated employees

outside the protected class were treated more favorably. *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499, 502 (3d Cir. 2018). Here, it is uncontroverted that Minor was the only African American out of the three transfer appointees to the Pittsburgh VA and that he was the only one who was denied transfer. The Secretary argues that to satisfy the fourth element of his *prima facie* case Minor needed to identify a non-African American whom the Pennsylvania State Police determined could not access the NCIC/CLEAN databases but was still selected to work as a police officer at the Pittsburgh VA. As already noted above, however, Minor has adduced evidence to the effect that he *was* qualified to access the NCIC/CLEAN databases. All three transfer appointees, therefore, met the objective qualifications for access to the NCIC/CLEAN databases and were similarly situated to each other. Because the two non-African American appointees were transferred to the Pittsburgh VA while Minor was denied transfer, they were treated more favorably. Minor has thus satisfied the fourth element of his *prima facie* case.

Because Minor has established the *prima fa*cie elements of his race discrimination case, the burden shifts to the Secretary to articulate a legitimate, nondiscriminatory reason for denying Minor's transfer to the Pittsburgh VA. The Secretary proffers Minor's inability to access the NCIC/CLEAN databases as the legitimate and nondiscriminatory reason for denying Minor's transfer. Thus, the Secretary has satisfied its relatively light burden of production. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997).

As such, Minor must proffer evidence from which the trier of fact could conclude the Secretary's stated reason is a pretext for why the action was actually taken. At this stage, the non-moving plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative

cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Under the first prong, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 765). Under the second prong, a plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* at 1111 (quoting *Fuentes*, 32 F.3d at 762).

The Court finds that Minor has adduced sufficient evidence to meet his burden under either prong of the pretext analysis. Under the first prong, there is sufficient record evidence from which a factfinder could reasonably disbelieve the Secretary's articulated reason of why Minor was not transferred. It is undisputed that both a line police officer at the Pittsburgh VA and a supervisory police officer at the Butler VA require access to the NCIC/CLEAN databases. Chief Bennett testified that Minor's criminal history was not an impediment to his ability to be promoted at the Butler VA. Taking these facts in the light most favorable to Minor, the inference to be drawn from Chief Bennett's testimony is that Minor would not be prohibited from accessing the NCIC/CLEAN databases as a supervisor at the Butler VA. Chief Bennett's testimony is therefore, inconsistent with and contradicts the Secretary's articulated reason for denying Minor's transfer as line police officer at the Pittsburgh VA.

Plaintiff has also identified evidence in the record to establish pretext under the second prong. In this regard, the record reflects that Cpt. Shumaker was unaware of Minor's race until their August 9, 2016 meeting. When Minor met in person for the first time with Cpt. Shumaker,

he provided information and documentation to explain that he should not be restricted from accessing NCIC/CLEAN. Minor testified that after reviewing his disposition paperwork at that meeting, Cpt. Shumaker stated that he would have never hired Minor. Additionally, Minor asserts that when he tried to confirm whether Cpt. Shumaker understood that the 2009 charges had been dismissed, Cpt. Shumaker acted as if he did not want to admit that those charges were indeed dismissed. In contrast to his efforts before he met Minor in person, Cpt. Shumaker then waited more than a week later before sharing Minor's disposition paperwork with Cpl. Winklowski and this was done *after* Cpl. Winklowski requested this documentation. Even after being provided documentation and information from Minor that confirmed that there were no impediments to accessing NCIC/CLEAN, Cpt. Shumaker told Cpl. Winklowski that he thought that one of the 2009 charges did not have a final disposition. Moreover, he never sought further clarification from Minor in this regard. Further, he made no effort to appeal or seek a review of the decision of the Pennsylvania State Police even though an appeal could be taken from this decision and he knew that Minor had shown him information that could rebut its basis.

Based on Cpt. Shumaker' conduct, statements and inaction, coupled with Minor's excellent record and Chief Bennett's positive reference, a reasonable factfinder could conclude that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the decision not to transfer Minor to the Pittsburgh VA. Minor also testified that, based on his personal observations and discussions with police officers at the Pittsburgh VA, out of a force of more than a hundred police officers, there were only two or three African American police officers at the Pittsburgh VA.

The Secretary argues that it is not the Court's role to second-guess Cpt. Shumaker. While the Court "do[es] not sit as a super-personnel department that reexamines an entity's business

decisions," *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995), the record includes evidence from which a fact finder could infer discrimination.

For these reasons, the motion for summary judgment as to Count I will be denied.

      B.    <u>Minor's Non-Selection for Lead Police Officer</u>

          *i.*    *Discrimination (Count II)*

With respect to the fact that Minor was not selected for the Lead Police Officer position, the Secretary contends that Minor has not met his burden of proof on the fourth element of his *prima facie* case of discrimination, that is, he has failed to demonstrate the existence of circumstances that give rise to an inference of unlawful race discrimination. The Court need not decide whether Minor has established a *prima facie* case of discrimination, however, because even assuming that he has, Minor has failed to show that the Secretary's articulated legitimate reason for not selecting him was pre-textual.

The Secretary maintains that Minor was not selected for the Lead Police Officer position because of his poor performance at the January 2017 interview. Minor did not wear professional attire for that interview, asked how long the interview will take, criticized aspects of the LETC training, told the panel that he did not believe all building checks were important, and scored lower on the software skills exercise than Officer Lightner. The contemporaneous notes of all three individuals who interviewed him reflect these issues and Minor himself does not refute what happened during his interview. In short, all of these factors contributed to Minor receiving a lower score on the interview compared to Officer Lightner.

In addition, as the Secretary points out, Chief Bennett and Lt. Namachar, two of the individuals who made the decision about who would be selected as Lead Police Officer, were the same people who initially hired Minor. It is uncontroverted that they also took a number of steps

to support and advance his career. (Def.'s SOF ¶¶ 12, 15, 21, 28, 41, 48, 49, 51, 67.) Similarly, there is no evidence that Sgt. Hinkle, the third member of the interview teams, was racist. While it's possible that there may have been personal animosity based on some of Minor's comments during the interview, this is not evidence of racism. (*Id.* ¶¶ 85, 85.) Thus, absent any evidence to the contrary, it is improbable at best to conclude that they would have inhibited his advancement based upon any racial animus.

In opposing summary judgment, Minor has not pointed to any evidence that would allow a factfinder either to disbelieve the Secretary nondiscriminatory reason for not selecting him, or to determine that discrimination was more likely than not a motivating or determinative cause of his non-selection. *Fuentes*, 32 F.3d at 764. Instead, as evidence of pretext, Minor simply claims that it is implausible that Officer Lightner could be selected over him given their relative qualifications. Even assuming that Minor is more qualified than Officer Lightner, a subjective conclusion at best, the Court "do[es] not sit as a super-personnel department that reexamines an entity's business decisions." *Brewer*, 72 F.3d at 332. To establish pretext, Minor "cannot simply show that the [Secretary's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the [Secretary], not whether the [Secretary] is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

The Court thus finds that Minor has failed to show that the Secretary's articulated legitimate reason for not selecting him for the Lead Police Officer position was pretextual.

### ii.    *Retaliation (Count III)*

To establish a *prima facie* case of retaliation a plaintiff must prove that: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal link between his participation in the protected activity and the adverse action.

*Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). For purposes of its motion, the Secretary does not contest the first two elements.

To prevail on the third element a plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action." *Carvalho-Grevious*, 851 F.3d at 259 (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). Here, Minor cannot meet that burden because the uncontroverted record demonstrates that none of the panel members who interviewed him for the Lead Police Officer position and ultimately selected another candidate knew that Minor had filed an EEO complaint related to the denial of his transfer to the Pittsburgh VA. Minor has produced no evidence that creates a material issue of fact on this issue. Thus, there is no evidence of a causal link between the decision to hire another candidate and Minor's EEO complaint.[7]

## V.   CONCLUSION

For these reasons, the Secretary's motion for summary judgment will be granted with respect to Counts II, III, and IV of Minor's Amended Complaint and denied with respect to Count I. An appropriate order will follow.

BY THE COURT:

Date:   June 17, 2020

PATRICIA L. DODGE
United States Magistrate Judge

---

[7] Moreover, even if Minor could establish *prima facie* case of retaliation, his claim necessarily fails because he has the burden to adduce sufficient evidence that "his . . . protected activity was a but-for cause of the alleged adverse employment action by the [Secretary]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). As noted above, Minor failed to adduce any evidence that supports his claim that the Secretary's articulated legitimate reason for not selecting him for the Lead Police Officer position was pretextual.